FILED
00 JAN -5 PM 2: 24
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PATRICIA HUMPHRIES, an )
individual; and
JOE HUMPHRIES, an )
individual,
)
    PLAINTIFFS,
)
VS.                                CV99-H-451-S
)
UNION CENTRAL LIFE INSURANCE
COMPANY, a corporation, )

    DEFENDANT.             )

ENTERED
JAN - 5 2000

MEMORANDUM OF DECISION

    Presently under submission are the October 8, 1999 motion of defendant for summary judgment in its favor with regard to both plaintiffs' claims and the motion for summary judgment of plaintiffs limited to the defense of estoppel raised by defendant. The court has elected to consider only the aspects of those motions addressed to Counts II and III, which are the only counts to which plaintiff Joe Humphries is a proper plaintiff[1]

---

    [1] Count I involves a claimed breach of contract between Patricia Humphries and defendant to which contract Joe Humphries was not a party. The court, rather than assuming that Joe Humphries is claiming under Count I for breach of contract (thereby exposing himself to monetary sanctions for pursuing a wholly frivolous claim) elects to view him as not a plaintiff under Count I. If this assumption is incorrect counsel for plaintiff must file a document with the court within ten days advising the court that Joe Humphries does insist on the court
(continued...)



and are the only counts where the issue of punitive damages is relevant. The complaint contains in Count I a breach of contract claim, in Count II a bad faith refusal to pay a claim, and in Count III a negligent, wanton and/or willful hiring or training or supervision claim.

The following are relevant undisputed facts with regard to the issues raised by defendant's motion as addressed to Count II and Count III.[2] Defendant issued to Patricia Humphries in 1990 a policy of disability insurance providing a $4,000 per month benefit (after a 90-day waiting period). The policy was outstanding at all relevant times. On February 16, 1998 defendant received from the insured a claim for benefits under the policy, listing her occupation as a certified registered nurse anesthetist (CRNA) and stating that her disability began January 8, 1998, the date on which her employment with Baptist Medical Center on Princeton Avenue in Birmingham was involuntarily terminated. Plaintiff's alleged disabling

---

[1](...continued)
viewing him as a plaintiff under Count I.

[2] The court is aware that an element of a bad faith refusal to pay claim is a breach of insurance contract, for absent a breach there can be no action for a bad faith refusal to pay. However, since the court is not considering defendant's summary judgment as it is addressed to the Count I breach of contract claim, the court will assume for the purposes of considering defendant's summary judgment motion as addressed to Count II that defendant did breach the contract of insurance.

2

condition is that she is psychologically unable to work in her occupation as a CRNA and that such inability is due to a major depression.

The claim was assigned by defendant to a senior claims examiner who acknowledged receipt of the claim and proceeded to collect information from the two physicians and prior employers identified by plaintiff in her claim. The medical records from Dr. Ray Thweatt, the psychiatrist who submitted the Attending Physician's Statement accompanying the claim, and Dr. Pink Folmar were obtained and submitted on April 16, 1998 to an outside medical consultant (Dr. Clayton Houser) utilized by defendant with regard to claims. On April 21, 1998 Dr. Houser concluded, based upon his review, that Patricia Humphries "does not have a cognitive deficit, and is looking for a job. She does not have a significant impairment." An extensive letter from Patricia Humphries to the senior claims examiner advised, among other things, that between January 8, 1998 and May 26, 1998 plaintiff had in fact applied for work as a CRNA at several hospitals in the Birmingham area without any positive response. The letter also advised that plaintiff was receiving unemployment benefits which the senior claims examiner understood were predicated upon plaintiff having certified that she was ready, able and willing to go back to work.

The senior claims examiner dispatched a field representative of defendant who personally visited plaintiff (and her husband) on June 16, 1998 and submitted to the senior claims examiner a written report on June 22, 1998. In that report the field representative noted that plaintiff told him that she was under the care of Dr. Folmer, seeing him every three months, and had been under his care for approximately seven years. Dr. Folmer was not the one who signed the Attending Physician's Statement accompanying the claim, but Dr. Thweatt who did sign that Statement had not seen plaintiff from April 10, 1997 until January 13, 1998. Dr. Thweatt's records regarding a February of 1998 visit also confirmed that plaintiff was applying for and interviewing for work as a CRNA. The field representative also reported that plaintiff told him in June that she was still looking for work as a CRNA. At the time of his visit to plaintiff in June of 1998 the field representative was unable to speak with Dr. Thweatt but made an appointment to see him in late July of 1998.

On June 26, 1998 an attorney representing plaintiff wrote a letter (received by the senior claims examiner July 7, 1998) demanding to know within ten days the reason for the delay in paying the claim "to avoid legal action for breach of contract and fraud." The senior claims examiner wrote the attorney on

4

July 9, 1998 setting forth information available to defendant, concluding as follows:

> We regret we are unable to approve disability benefits at this time based on the information contained in our files. We will certainly review and take into consideration any additional information Ms. Humphries may care to submit.

No additional information was ever submitted to defendant by or on behalf of Ms. Humphries. Since the senior claims examiner anticipated a response to her July 9, 1998 letter she elected to have the field representative complete the work on the claim that he had already scheduled, including the meeting with Dr. Thweatt scheduled for July 21, 1998. Dr. Thweatt told the field representative that Ms. Humphries was not currently disabled from working as a CRNA and gave to that field representative a July 21, 1998 letter to him stating the following:

> As we have discussed today regarding Ms. Humphries, I do not think she is currently disabled psychiatrically but I do think she is in a very precarious position. She desperately needs to get back to work and be successful. If she fails to find work or her next work goes badly, she could certainly become significantly demoralized, potentially drink, and be disabled.

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

5

See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Id.</u> at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears

the burden of proof on the issue at trial.  See <u>Fitzpatrick</u>, 2 F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  <u>Fitzpatrick</u>, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the nonmoving

party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).

Given the latitude courts give to insurers to investigate and evaluate claims, in the face of the foregoing undisputed facts, plaintiff has simply not come forward with evidence which would create an issue of fact suggesting an intentional refusal by defendant to perform the duty of good faith and fair dealing implied by law.  After viewing all of the evidence presented most favorably for plaintiffs, including the opinion expressed by plaintiff's "expert," Tim Terry, even though the court at trial

likely would not permit him to express his opinion, the court concludes there is no dispute as to any material fact and that defendant is entitled to summary judgment on the claim against it under Count II of the complaint.

As weak as plaintiffs' bad faith claim is under Count II, their claim under Count III is even weaker.  The evidence is undisputed that the handling of the claim was assigned to a senior claims examiner who promptly began a through investigation and compilation of material evidence relevant to the claim, including the medical records from the only two known physicians.  She submitted the medical information to an outside medical consultant for his opinion and received written reports from a field representative of defendant regarding his visits with plaintiff and her primary physician.  In writing to counsel for plaintiffs that she was unable to approve the disability benefits on the basis of information available as of July 9, 1998, she advised that she would certainly take into consideration any additional information plaintiffs cared to submit.  No additional information was submitted.  Viewing all of the evidence most favorably for plaintiffs, including as earlier noted the opinion of plaintiffs' "expert," Tim Terry, the court is fully satisfied there is no dispute as to any material fact with regard to the

Count III claim and that defendant is entitled to a judgment in its favor under Count III also.

A separate judgment will be entered in favor of defendant with regard to the claims of plaintiffs under Counts II and III. As noted earlier, these are the only counts under which Joe Humphries has a claim and under which punitive damages appropriately could be an issue. Accordingly, the court concludes that there is no just reason to delay an entry of final judgment as to the claims pursued under Counts II and III and will expressly direct that a partial final judgment in favor of defendants be entered as to Counts II and III pursuant to Fed. R. Civ. P. 54(b).

Remaining in this action is the claim of only Patricia Humphries for breach of contract under Count I which is the subject of the unresolved aspect of defendant's October 8, 1999 motion for summary judgment and the subject of plaintiff's December 1, 1999 motion for summary judgment as to the defense of estoppel.

DONE this 5th day of January, 2000.

*[signature]*
SENIOR UNITED STATES DISTRICT JUDGE